# WHEELING.

## STATE FOR USE &C. *v.* RAWSON.

Submitted June 23, 1884.—Decided Nov. 1, 1884.

1. An award of  arbitrators was returned  to a county court before the adoption  of the amendment of our constitution taking from the county court the right to try civil suits and transferring suits then pending in such courts to the circuit courts ;  and the county court made an order directing the parties to be summoned to appear before the court at its next trial-term to show cause, if any they can, why said award should not be entered up as the judgment of the court ; but before the next county court was held, this amendment of  the constitution  was adopted, and the clerk of the circuit court issued the summons, which the county court had ordered, returnable to the first day of  the  next circuit court.   This summons was issued prior to  the passage  of  any statute-law to carry into effect this amendment of the constitution.  The parties appeared in answer to the summons, and exceptions were filed to the award, and the case was heard on its merits, though no formal entry was made docketing the case in the circuit court, but no objections were made by the parties to the jurisdiction of the court. On a writ of error to the judgment of the circuit court held: The appellate court will not reverse  the  judgment of the circuit court, on the ground that it had not jurisdiction of  the case,

2. If an order be entered by a court with consent of parties by their counsel, submitting all matters of difference between them in a suit to the final determination of two arbitrators, naming them, and in case they disagree, then to the determination of some other person, whom they may choose for umpire ; and on a copy of this order ·signed by the counsel of the parties there is endorsed at the time of the trial of the case before the arbitrators in the presence of the parties and with their assent an agreement to change the submission by adding the name of a third arbitrator, the decision of two arbitrators to be final, and erasing from the order the clause in regard to an umpire, and the case is heard before these three arbitrators, and an award returned.  HELD :

The award is binding on the parties, and the court may enter up judgment pursuant thereto.

GREEN, JUDGE, furnishes the following statement of the case ·

This was an action of debt brought in the county court of Pleasants county, on June 10, 1879, by the State of West Virginia, successor to the Commonwealth of Virginia, suing for the use of Elizabeth Rawson against Sarah A. Rawson, her late guardian, and Jesse Pride, the security in her guardian bond.  The summons was served on Sarah A. Rawson, but returned not found as to Jesse Pride, and he did not appear in the suit.  On May 12, 1880, the following order was made in the case:  "This day came the parties by their attorneys and by cross-suit submit all matters in difference between them in this suit to the final determination of E. B. Steere and Thornton M. Janes and, in case they disagree, then to the determination of some other person as they may choose for umpire, so as the award be ready to be delivered to either of the said parties in writing on or before the first day of the next trial-term of this court, and which award or umpirage the parties agree shall be entered up at the next trial term as the judgment of the court."  This order of the court of May term, 1880, was copied out and signed by R. Patterson, attorney for plaintiff, and Hall & Townsend, attorneys for defendants.  On the back of this order so copied and signed on the 31st of August, 1880, there was written the following memorandum signed by the attorneys for said parties:

"AUGUST 31, 1880.

"We, the undersigned, hereby change the within submission by adding the name of V. A. Dunbar as an additional arbitrator, the decision of any two of whom shall be final, erasing the clause in regard to the umpire.

"R. PATTERSON,
"Attorney for Plaintiff.
"HALL & TOWNSEND,
"Attorneys for Defendants."

On September 16, 1880, the arbitrators returned the following award to the court:

"Whereas, matters in controversy between Elizabeth Rawson and Sarah A. Rawson, guardian, pending in the county court, West Virginia, in a cause entitled "State of West Virginia, for the use of Elizabeth Rawson, vs. Sarah A. Rawson, guardian and others," at the May term, 1880, thereof, were by them submitted to the undersigned, E. B. Steere and Thornton M. Janes, as arbitrators, as by their submission in writing made at the said term of said court, a copy of which is hereto annexed, more fully appears; and whereas, the parties to said suit, afterwards, to-wit, on the 31st day of August, 1880, with their attorneys, met and changed said submission by actual agreement, by adding the name of V. A. Dunbar as a third arbitrator and erasing the clause in regard to the umpire, as will more fully appear by the writing endorsed on the copy of the original submission aforesaid: Now, therefore we, the arbitrators mentioned in the said submission, having been first duly sworn according to law, and having heard the proofs and allegations of the parties and argument of counsel on both sides, and having examined the matters in controversy by them submitted, do make this award in writing—that is to say, we find that the said Sarah A. Rawson, guardian, is indebted to the said Elizabeth Rawson over and above all set-offs and counter-charges as follows, to-wit:

| | |
|---|---|
| "For her share of the *bonus* money received under the lease to John Gilfillan, with the interest thereon to Sept. 1, 1880... | $619 78 |
| "For her share of rent, oil sold and positively proved, with interest thereon up to Sept. 1, 1880. ... | 290 61 |
| "Total indebtedness | $910 39 |

4

"With interest thereon from the first day of September, 1880, until paid, together with all costs by the said Elizabeth Rawson in her behalf in this cause expended.

"In witness whereof we have subscribed these presents this first day of September, 1880.

                    "V. A. Dunbar,
                    "T. M. Janes,
                    "E. B. Steere, *Arbitrators.*"

The said county court of Pleasants on this day, September 16, 1880, ordered that the said parties be summoned to appear before that court on the first day of the next trial-term to show cause, if any they could, why this award should not be entered up as the judgment of the court.

On February 9, 1881, the clerk of the circuit court of Pleasants county issued a summons against Elizabeth Rawson and Sarah A. Rawson, late guardian, requiring them to appear before the judge of the circuit court of Pleasants at the court-house thereof on the 14th day of March, 1881, the first day of the next term of said court to show cause, if any they could, why the award as made by said arbitrators in said suit in the late county court should not be entered up as the judgment of the circuit court, the summons reciting that the circuit court of Pleasants county had succeeded to and had jurisdiction of all suits pending and undetermined in the late county court of Pleasants county by the adoption of the amendment to the constitution of this State on October 12, 1881, and that this award had been filed in said county court at the September term, 1880. This summons was duly served on the parties. At the March term of the circuit court of Pleasants the parties to said suit appeared and Sarah A. Rawson filed the following exceptions to this award:

"First Exception.—The award is not within the submission.

"Second Exception.—The arbitrators changing the rule of submission by not referring the matters in difference to an umpire, but instead changing the order from that to a third arbitrator, destroying the legal effect of said submission thereunder.

"Third Exception.—For that the said award was improperly and unlawfully made, for the reason that one of the arbi-

trators, V. A. Dunbar, was an important witness for the plaintiff, and was sworn and testified in favor of the plaintiff, and rendered a decision on his own testimony on the hearing of the said matters in controversy, and which fact was not known to the said defendants at the time of the consent given to allow the said V. A. Dunbar to act as arbitrator, by which great injustice was done to the defendants.

"Fourth Exception.—For that, whereas, the said award was improperly made, for the reason that the plaintiff filed no bill of account (or particulars), giving the defendants no notice of the nature of the plaintiff's claim against the said defendants, by which great injustice was done to the defendants.

"In all of which particulars defendant is advised, that the award is contrary to law, and prays the same may be set aside and the matters in controversy referred to other arbitrators or to a jury, as may seem proper and right."

To support these exceptions, she filed the following affidavit of W. W. Hall:

" STATE OF WEST VIRGINIA, PLEASANTS COUNTY, TO-WIT:

" This day personally appeared before me, J. L. Knight, clerk of the circuit court of Pleasants county, W. W. Hall, and made oath that at the time of the agreement made and entered into to change the order made by the county court submitting the matters in controversy in the above entitled cause, he was not aware that the said V. A. Dunbar was an important witness for the plaintiff, Elizabeth Rawson, and that the result of the award and finding of the arbitrators was largely due to the testimony given by said V. A. Dunbar, who was sworn and testified on behalf of the said plaintiff as a witness, and before the award was made. And said affiant further says that had he known that said Dunbar would be used as a witness in the case, the said consent would not have been given.

" Given under my hand this 17th day of March, 1881.

" W. W. HALL.

" Subscribed and sworn to before me this 17th day of March, 1881.

"J. L. KNIGHT, *Clerk.*"

Thereupon the plaintiff filed the following affidavit of V. A. Dunbar:

"STATE OF WEST VIRGINIA, PLEASANTS COUNTY, TO-WIT:

"V. A. Dunbar being duly sworn says that he has no recollection of being sworn as a witness in a certain arbitration held by E. B. Steere, T. M. Janes and himself; but he does remember being sworn as an arbitrator. When he was asked by Robert Patterson, Esq., whether he knew anything in relation to the matters submitted to said arbitrators, when it was discovered that what he did know about the business of the parties to the cause of the State of West Virginia for use of Elizabeth Rawson *vs.* Sarah A. Rawson, was subsequent and outside of the matters submitted to said arbitrators, and was not considered in the award made by them.

" And further, that he is now and was then well aware that his sitting in judgment upon his own evidence would be good cause for setting aside any award so made, and that if he had been called as witness in said matter, he would have refused to act as an arbitrator in said cause.

"V. A. DUNBAR.

" Subscribed and sworn to before me this 16th day of March, 1881.

"R. PATTERSON, *Notary Public."*

On March 18, 1881, the court overruled these exceptions and rendered judgment for the plaintiff against the defendant, Sarah A. Rawson, for $910.39, with interest from September 10, 1880, till paid, and costs. Elizabeth Rawson subsesequently died; and her estate was committed to Wm. E. Pride, sheriff of Pleasants county, as her administrator.

A writ of error and supersedeas was awarded Sarah E. Rawson on this judgment.

*Loomis & Tanner,* for plaintiff in error.

*R. Patterson,* for defendant in error.

GREEN, JUDGE:

On the second Tuesday in October, 1880, an amendment to the constitution of this State was adopted by a vote of the people. Section 25, article VIII in this amendment provides, that "all actions, suits and proceedings not embraced in

the next preceding sections (which include the pro-
ceedings in this case) pending in a county court, when
this article takes effect, together with the records and
papers pertaining thereto shall be transmitted to and
filed with the clerk of the circuit court of the county, to
which office all process outstanding at the time this article
goes into operation shall be returned; and the clerk shall
have the same power and shall perform the same duties in
relation to the said records, papers and proceedings, as were
vested in and required of the clerk of the county court on
the day before this article took effect. All such actions,
suits and proceedings so pending as aforesaid shall be dock-
eted, proceeded in, tried, heard and determined in all respects
by the circuit court, as if said suits and proceedings had origi-
nated in said court." (Acts of 1883, p. 195.)

This suit had been pending in the county court of Pleas-
ants from June 16, 1879; and all matters of difference be-
tween the parties had been submitted to the final deter-
mination of arbitration.   On September 10, 1880, the
arbitrators presented their award in the case; and the
court ordered at once the parties to the suit to be summoned
to appear on the first day of the next trial-term of said
county court to show cause, if any they could, why this award
should not be entered up as the judgment of that court; and
the case was continued.   Before the next trial-term of said
county court this amendment of our constitution was
adopted and this 25th section went into operation.   After
it went into operation, on Febuary 9, 1881, the clerk of
the circuit court of Pleasants county issued the summons re-
quired by this last order of the county court of Pleasants
county making it returnable to the first day of the next term
of the circuit court of Pleasants county.   This summons was
duly served on all the parties; and they appeared, neither of
them making any objection to the jurisdiction of the court, to
hear and determine the matters in controversy.       i

The legislature of West Virginia on February 11, 1881,
passed an act concerning the county courts (chapter 5 of Acts
1881), the 10th section of which was in almost the identical
language of this 25th section of article VIII of the amended
constitution.   The plaintiff in error by her counsel insists,

that till after the passage of this act the clerk of the circuit court of Pleasants county had no authority to issue the summons, which he issued on February 9, 1881. It seems to me clear, that he had precisely the same authority to issue this summons on February 9, 1881, that he had to issue it after February 11, 1881. This 10th section of the Acts of of February 11, 1881, being in almost the identical language as the 25th section of article VIII of the amendment of the constitution could confer on the clerk of the circuit court no other or different powers in this respect than had already been conferred upon him by this amendment of the constitution. But even if it were otherwise, the fact that the parties to this suit appeared in pursuance of this summons and made no sort of objection to the hearing and determining of the cause by the circuit court of Pleasants, which actually did hear the case on its merits after the introduction of new evidence touching the merits of the matters involved in this summons, is, it seems to me, a waiver of all objections to the jurisdiction of the court, and no such objections can now be urged in this Court. This too is a sufficient answer to the objection, that no formal order was made docketing this case in the circuit court of Pleasants, even if such a formal order would otherwise have been deemed necessary, which I can not think it would.

These preliminary questions being disposed of, let us now consider, whether the circuit court erred on the merits of the case. And first, did it err in overruling the exceptions of the defendant below to the award ? It was decided by this Court that "an attorney at law, as such, has no authority before or after the institution of a suit to make an agreement *in pais* to submit his client's cause to arbitrators, though he may, if his client's are adults, consent in open court to submit their cause to arbitration; and if they be adults, they will be thereby bound." (In *Grimes* v. *Curry*, 13 W. Va, 30, syllabus 2). Was the alteration made in this case on August 31, 1880, by the memorandum signed by the counsel of the parties a change in the whole tenor of the submission made solely by the attorneys of the parties as such; and did they in so doing exceed their authority, as they would have done, had they on the 31st of Ausust, 1880,

agreed to a submission of the matters in controversy without the express or necessarily implied assent of their respective clients resulting from their conduct, had no previous submission been made in open court on May 12, 1880?

There are two Virginia decisions which throw light on this question. The oldest, *Shermer* v. *Beale*, 1 Wash. 11, was a chancery suit, in which an order was made by counsel referring all matters in difference between the parties to the final determination of two arbitrators, and in case of their disagreement to such umpire as they should choose. Afterward the parties signed a written agreement authorizing the arbitrators to appoint a third person to assist them in forming and making up the award. An award was made up and signed by the three. The Court of Appeals decided that it was proper for the court, unless cause could be shown against it, to enter up a decree in pursuance of this award. In *Munloor* v. *Thrift*, 5 Munf. 493, which was a common law suit, by an order of the court the parties referred the matter in controversy to John Pegram and Thomas Thweatt, whose award was to be made the judgment of the court. The parties afterward signed an agreement substituting as an arbitrator Edward Pegram in lieu of Thomas Thweatt, who refused to serve, agreeing that their award should be entered as the judgment of the court. Their award, which set out that they had heard the parties, was returned to the court. The circuit court refused to enter up a judgment pursuant to this award. The court of appeals said that this was clearly an error on the principles settled in *Shermer* v. *Beale*, 1 Wash. 11.

In *Browning* v. *McManus*, 1 Whar. Pa., an arbitrator was substituted in place of one who refused to serve. In the absence of all contradiction by the record the appellate court presumed that the defendant was present in person or by counsel and consented to the substitution. The record simply stated that one of the referees "being unable to attend on account of indisposition, another" (naming him) "was appointed."

The case of *Lattimore* v. *Martin*, Addison's Reports, (cases in county courts of fifth circuit and in the high court of error and appeals of Pa., in year 1791) is very similar to

the one before us. The case was referred by a rule of court to five persons, on whose award or the award of a majority of them judgment was to be entered. The report returned to the court showed that four of the referees and both parties met, and the parties agreed to substitute another person in lieu of an absent referee named in the rule. This agreement was signed by the parties and produced in court. The award was signed by the four referees, who had been named in the rule, and by the substitute referee. The court was of opinion, that this award was good, and that judgment might be rendered upon it. The president said : "There is a majority without the absent referee; that is enough. The award would be good if the new name was not there. Shall its being there *by the consent of the parties* make it bad ? "

So in *Bemus* v. *Clark*, 29 Pa., the court speaking of the substitution of an arbitrator at the time of the trial of the case before the arbitrators say : "We do not scan the report of arbitrators in the same way we do the record of the proceedings of the court ; for the law does not require them to report anything but their decision ; and they are a mere transient tribunal, not expected to be skilled in the strictness of forms. We presume everything to have been regularly done by them, when it does not appear to be irregular ; and even if it appear irregular, we presume the consent of parties if they were present.

It is true that it was held in *Woodbury* v. *Proctor*, 9 Gray 18, that "Upon a reference by rule of court the award must be made by the arbitrators named in the rule ; and even if the parties by writing endorsed on the rule substitute an arbitrator in the place of one of those named, and waive all exceptions, no judgment can be rendered on the award." See also *Layell* v. *Houghton*, 32 Vt. 579. There is however an apparent difference between the Virginia case and the Pennsylvania case and the case now before us in this : that in the Virginia and the first Pennsylvania case the parties themselves signed the written agreement, whereby another arbitrator was added to those named in the rule, while in the case before us this addition was made by a written agreement signed only by the counsel of the parties. But this difference is more apparent than real. For the answer, which was re-

turned to the court, was signed by the original arbitrators named in the rule, and on its face stated, that "the parties to said suit afterwards, to-wit, on the 31st day of August, 1881, met with their attorneys and changed said submission by actual agreement by adding the name of V. A. Dunbar as a third arbitrator." So that though the memorandum of this agreement was signed only by the counsel of the parties, yet the agreement itself was made by the parties, though they did not sign the memorandum in writing of this their oral agreement. Now the original submission in the case before us, which was made by a rule, was a submission made by the parties orally and by no bond or agreement made or signed by them, the only memorandum of it being signed by their counsel and not referred to in the order of reference. This being the case, if it could be altered by an agreement signed by the parties adding a third arbitrator, as it could by the Virginia cases, then surely it might be altered by an agreement made by the parties in the same manner with the original agreement, that is, by an oral agreement of the parties and a memorandum of it made and signed by their counsel. See as supporting this position *Evileth* v. *Chan et al*, 17 Mass. 460. As a still stronger case showing the liberality of the courts in enforcing awards, which have been rendered by arbitrators, one of whom has been added by the oral agreement of parties at the time of trial, though the original agreement was in writing and signed by the parties, I may refer to *Blanchard* v. *Murray*, 15 Vt. 548. The syllabus of this case is : "In the case of a written submission to three, and in case one of them could not be procured, to a fourth—held that an award made by the four in pursuance of an agreement of parties on the day of trial was good."

The case shows that this addition of the fourth arbitrator on the day of trial was made by an oral agreement. But I will say, that where in other cases, as is claimed, the case has been submitted to arbitrators by an order of the court made by consent of counsel only, it seems to me the counsel by a written agreement at the time of the trial would have a right to add another arbitrator. For though counsel cannot as such without special authority submit a case to

arbitration *in pais*, yet they can do it in court; and if once done, they have at least as much discretion at the trial of the case as counsel to make arrangements about the trial, as they would have on a trial before a jury in court; and they can by consent try a case before less than twelve jurors. There seems to me a marked difference between holding that counsel as such without the consent of their client can submit a case before suit brought or after suit brought by an agreement *in pais*, and holding that, the case having been regularly and properly submitted to arbitrators by an order of the court, on the trial of it before arbitrators the counsel as such may make an agreement to add to or subtract from the number of arbitrators, who are to try the case.

There is still another ground, which, it seems to me, ought to have weight in reaching a conclusion in this case. The case was submitted by the order of the court to two named arbitrators, and in case they should disagree, then to the determination of some other person whom they may choose, as umpire. It has been decided in *Reson* v. *Berry*, 4 Rand, 275, that where a submission is made of all matters in difference between two parties in a pending suit to two arbitrators and such umpire as they may choose, their award to be made the judgment of the court; and the arbitrators and umpire act together and make a joint award, such award will be good. This being law, as V. B. Dunbar could have been chosen as an umpire by the other arbitrators named in the rule, and could have set with them, as he did, and signed the reports jointly with them, and in short could have done exactly what he did do, are the actions of those arbitrators and umpire to be treated as a nullity, because counsel in their agreement choose to call Dunbar a third arbitrator instead of an umpire, and he chooses to sign his name as an arbitrator and not as an umpire? It does seem to me, that this would be applying to arbitrators a degree of technicality not justified by the liberal spirit now shown to them.

For these reasons I think the circuit court should have entered up a judgment on the award in this case, as it did, unless the third and fourth exceptions to the award can be sustained. The first of these is, that V. A. Dunbar was an important witness for the plaintiff below and testified in

favor of the plaintiff below and then rendered a decision on his own testimony, and the fact that he was such a witness was unknown, when the consent was given to his sitting as an arbitrator.   Whereof the counsel for the defendant below makes affidavit, that when he consented that Dunbar should be added as an arbitrator, he was not aware that he was an important witness for the plaintiff, and that the award was largely due to his testimony.   But before this affidavit had been made, Dunbar had made an affidavit, that when he was being sworn as an arbitrator by the justice, he was asked by him, whether he knew any thing about the matter submitted to the arbitrators, and his answer thereto showed that he did not, and all he did know about the business of the parties was subsequent to and outside of the matters in controversy in this suit, and they were not considered in making up the award.   He has no recollection of being sworn as a witness before the arbitrators.   From this evidence it seems to me there was no improper behavior by Dunbar as an arbitrator. In reaching this conclusion I have taken his affidavit as stating the facts rather than that of the defendant's counsel.   If Dunbar did give any important testimony before the arbitrators, which materially affected their award, he should have been proven to have done so by them, and in the absence of any statement from them we can not set aside their award because of any supposed misconduct on the part of the arbitrator, Dunbar.   If he was guilty of any misconduct, the plaintiff in error has failed to prove it by any satisfactory evidence.

There is nothing in the exception to the award, that the record does not show that a bill of particulars was filed with the declaration.   The declaration may have set out the plaintiff's claim in such detail as to render a bill of particulars entirely unnecessary.   This declaration is not copied in the record, it having been lost, or it may be, that, as I suppose was the case, all the particulars of the plaintiff's claim were produced before the arbitrators.   The award on its face refers to the particulars of the plaintiff's claim.

The judgment of the circuit court must be affirmed; and the defendant in error must recover of the plaintiff in error his costs in this Court expended and damages according to law.

AFFIRMED.